IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| TOOLBOX WIDGET INC., | CV 24-148-M-KLD |
| Plaintiff, | |
| vs. | ORDER |
| ERNST MANUFACTURING, INC., | |
| Defendant. | |

    Plaintiff Toolbox Widget Inc. ("TBW") brings this action against Defendant Ernst Manufacturing, Inc. ("Ernst"). In the complaint, TBW asserts six counts against Ernst, all related to the advertising and marketing of Ernst's products. (Doc. 1). Before the Court is Ernst's motion to dismiss for lack of personal jurisdiction and for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(c). (Doc. 26). For the reasons discussed below, the motion to dismiss is granted with leave for TBW to amend the complaint.

**I.   Background**

    TBW is a Montana corporation that "creates, manufactures, markets and sells tool organizers and accessories." (Doc. 1 at ¶ 2). TBW's principal place of business is in Columbia Falls, Montana. (Doc. 1 at ¶ 2). Ernst is an Oregon corporation that similarly manufactures and deals in tool organizers and

accessories. (Doc. 12 at ¶ 3). Ernst's principal place of business is in Sandy, Oregon. (Doc. 12 at ¶ 3).

In some instances, Ernst and TBW sell competing products. For instance, TBW alleges that their "Wrench Organizer – Vertical PRO" is similar to Ernst's "40 Tool Modular Wrench Pro." (Doc. 1 at ¶¶ 69-70). TBW alleges that these products are in direct competition. (Doc. 1 at ¶ 71). TBW further alleges—and Ernst admits—that Ernst has sold and shipped products to customers in Montana through its own website (Doc. 1 at ¶¶ 12-13; Doc. 12 at ¶¶ 12-13). Ernst also sells products through Amazon, and acknowledges that it has also sold products through that platform to customers in Montana. (Doc. 29-1 at ¶¶ 16-20).

The complaint in this matter was filed on October 24, 2024, and includes six counts against Ernst. First, TBW asserts that, by inserting the terms "toolbox widget" and "tool box widget" into the metadata of its website, Ernst infringed on TBW's registered design mark "TOOLBOX WIDGET," in violation of the Lanham Act, 15 U.S.C. § 1114(1). (Doc. 1 at ¶¶ 94-100). Second, TBW asserts that the same conduct constitutes common law trademark infringement under the Lanham Act, 15 U.S.C. § 1125. (Doc. 1 at ¶ 104-10). Third, TBW asserts that Ernst has engaged in unfair competition and false advertising by incorrectly advertising its products as made in the United States, in violation of 15 U.S.C. § 1125(a)(1)(B). (Doc. 1 at ¶¶ 113-23). Fourth, TBW asserts that Ernst has engaged

2

in unfair competition and false advertising by listing expired patents in promotional materials, in violation of 15 U.S.C. § 1125(a)(1)(B). (Doc. 1 at ¶¶ 125-30). Fifth, TBW asserts that Ernst's "Made in the USA" advertising constitutes false designation of origin, in violation of 15 U.S.C. § 1125(a)(1)(B). (Doc. 1 at ¶¶ 134-140). Finally, TBW asserts that Ernst's use of "Made in the USA" violates the Montana Consumer Protection Act, Montana Code Annotated § 30-14-103. (Doc. 1 at ¶¶ 145-146).

Attached to TBW's complaint are two emails sent to Ernst in 2023. (Docs. 1-7, 1-8). The emails appear to have been sent by counsel for TBW, and bear the letterhead of a law firm presently representing TBW in this matter. Neither email names or mentions TBW or any relationship between TBW and the law firm. The first email (Doc. 1-7), dated June 7, 2023, relates the sender's belief that certain magnets used in Ernst's products are not made in the United States and that therefore the company's statements that their products are "Made in the USA" are in violation of FTC standards. The email states:

> If your magnets (or any other component of your products) are made outside of the US, please remove all variations of the unqualified "Made in the USA" claims on your website." Doing so will avoid consumers deception and ensure that the marketplace is fair for competitors.

(Doc. 1-7 at 1).

The second email (Doc. 1-8), dated June 27, 2023, elaborates on the statements in the earlier email, and includes specific demand language and a request that Ernst cease and desist from marketing its products as made in the United States.

> [P]lease be aware that failure to complete corrective action by July 27, 2023 for your digital assets and December 27, 2023 for your physical assets is likely to result in the submission of a formal complaint to the FTC regarding your deceptive business practices. It is critical to protect the interests of consumers and ensure a fair and competitive marketplace.

(Doc. 1-8 at 2, emphasis omitted).

Ernst filed an answer to the complaint on December 2, 2024. (Doc. 12). In the first paragraph regarding defenses, the answer states "[t]his Court lacks personal jurisdiction over Defendant." (Doc. 12 at 15 ¶ 1). On January 21, 2025, Ernst filed the instant motion. (Doc. 26). Ernst argues that this case should be dismissed for lack of personal jurisdiction. In the event the court denies the motion, Ernst moves for judgment on the pleadings as to Count IV of TBW's complaint. (Doc. 26 at 2). The motion is fully briefed and ripe for ruling.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal when a court lacks personal jurisdiction over the defendant. When a "defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin*

*Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal citation omitted). While the plaintiff cannot simply rest on the bare allegations of the complaint, the court must take uncontroverted allegations in the complaint as true and resolve any conflicts in the affidavits in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800; *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Fed. R. Civ. P. 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "[P]leadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. U.S.*, 419 F.3d 1058, 1061 (9th Cir. 2005). "Judgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). The "court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez*, 683 F.3d at 1108.

## III. Discussion

The power of the federal court "to exercise personal jurisdiction over a non-resident defendant turns on two independent considerations: whether an applicable state rule or statute potentially confers personal jurisdiction over the defendant, and whether the assertion of such jurisdiction accords with constitutional principles of

due process." *Data Disk, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977). When subject matter jurisdiction is based on a federal question, as is the case here, the federal court applies the long-arm statute of the forum state to whether it has personal jurisdiction over a nonresident defendant. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

Therefore, to establish personal jurisdiction, a plaintiff must make a prima facie showing that: (1) the requirements of Montana's long arm statute are met; and (2) the exercise of that jurisdiction will not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Gulick v. Lynden, Inc.,* No. CV 16-39-BU-BMM-JCL, 2016 WL 8674478, at *2 (D. Mont. Oct. 7, 2016). Due Process requires that the defendant has "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 351 (2021) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945)).

    a.    **Montana's Long Arm Statute**

Montana's long arm statute, Montana Rule of Civil Procedure 4(b)(1), "permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process." *Davis v. Am. Family Mut. Ins.*

*Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). The long-arm statute "embodies principles of both general and specific jurisdiction." *Poliseno v. Credit Suisse Securities (USA), LLC*, No. CV-12-108-BLG-RFC, 2013 WL 1767951, at *3 (D. Mont. Apr. 24, 2013).

A court may have general jurisdiction over a nonresident if the defendant is "found within the state of Montana." Mont. R. Civ. P. 4(b)(1). A defendant is "found within" the state if it is "physically present in the state" or its "contacts with the state are so pervasive that [it] may be deemed to be physically present there." *Bi-Lo Foods, Inc. v. Alpine Bank*, 955 P.2d 154, 157 (Mont. 1998) (quoting *Lurie v. 8182 Maryland Associates*, 938 P.2d 676, 678 (Mont. 1997)). "A nonresident defendant that maintains 'substantial' or 'continuous and systematic' contacts with the forum state is found within the state and may be subject to the state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum." *Bi-Lo Foods, Inc.*, 955 P.2d at 157 (quoting *Lurie*, 938 P.2d at 678 (Mont. 1997)). General jurisdiction exists when a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Lewis v. Extradition Transport of America*, No. CV 13-138-M-DWM-JCL, 2014 WL 494573, at *2 (D. Mont. Feb. 5, 2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)).

7

Even where a defendant maintains only minimum contacts with the forum state, specific long-arm jurisdiction may be established if the plaintiff's cause of action arises from any of the following activities:

    (a) the transaction of any business within Montana;

    (b) the commission of any act which results in accrual within Montana of a tort action;

    (c) the ownership, use or possession of any property, or any interest therein, located within Montana;

    (d) contracting to insure any person, property or risk located within Montana at the time of contracting;

    (e) entering into a contract for services to be rendered for materials to be furnished in Montana by such person;

    (f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within Montana; or

    (g) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1)(a)–(g). *See also Bi-Lo Foods*, 955 P.2d at 157.

Although Ernst addresses general jurisdiction in its briefing, TBW does not argue that the Court has general jurisdiction over Ernst. Rather, TBW argues that the Court has jurisdiction over Ernst based Mont. R. Civ. P. 4(b)(1)(A), (B), and 4(b)(2)(B). Accordingly, the Court does not need to address general jurisdiction. Further, because TBW has met the standard to establish personal jurisdiction under 4(b)(1)(A), the Court need not address the other statutory sections cited by TBW.

As above, Montana courts have jurisdiction over persons as to claims arising from "the transaction of any business within Montana." Mont. R. Civ. P. 4(b)(1)(A). Both parties cite to cases which address the threshold at which transacting business within Montana becomes sufficient to confer personal jurisdiction over a defendant. Although several of the cited cases provide generally applicable guidance for interpreting the statute under Montana law, neither party has identified a decision which precisely mirrors the facts at hand—where an out-of-state defendant has sold and shipped products into the state via phone sales and an interactive website.

While not cited by the parties, the United States District Court for the District of Montana addressed closely analogous facts in *Catahara v. Elemental Prism, LLC.* No. CV-17-128-GF-BMM, 2018 WL 3448283 (D. Mont. July 17, 2018). There, the Court found that an out of state defendant who had shipped products into Montana had "transacted business" within the state for the purposes of personal jurisdiction under Mont. R. Civ. P. 4(b)(1)(A). 2018 WL at *3 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1126-27 (W.D. Pa. 1997)).

The *Catahara* court determined that the court had specific jurisdiction because the out-of-state defendant "sold and shipped its products directly into Montana," "processed online orders," "worked with Montana residents to facilitate

credit card transactions," and "allegedly reached out to Montana customers . . . by sending free samples and test kits." 2018 WL at *3. In general, the defendant "chose to operate a website and phone number that it made available to out of state residents and chose to process their orders." 2018 WL at *3. Accordingly, the court found these factors sufficient to establish specific jurisdiction. 2018 WL at *3. Similarly, the Court in *Kell v. Freedom Arms Inc.* found that the sale of 22 firearms by an out-of-state manufacturer to purchasers and retailers in Montana constituted "the transaction of any business within Montana" under 4(b)(1)(A). 748 F. Supp. 3d 973, 981 (D. Mont. 2024).

     Here, Ernst confirms that it has sold and shipped products to customers in Montana. (Doc. 29 at 8). These sales were made through Ernst's interactive website, Amazon, and phone orders. (Doc. 29 at 8-9). Ernst further confirms that at least some of these sales included the magnetic wrench organizer implicated in TBW's "Made in the USA" claims. (Doc. 29 at 9). Following decisions from this District in *Catahara* and *Kell*, the Court finds that these sales are sufficient to constitute the "transaction of any business within Montana" under 4(b)(1)(A). Accordingly, the specific jurisdictional requirements of Montana's long arm statute are satisfied.

### b. Due Process Requirements

Having met the requirements of Montana's long-arm statute, TBW must make a prima facie showing that the exercise of personal jurisdiction over Ernst would not violate the Due Process Clause of the Fourteenth Amendment. Courts embraced by the Ninth Circuit apply a three-part test to determine whether the exercise of specific jurisdiction over an out-of-state defendant is consistent with due process. Under that analysis

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 2561 (2024) (citing *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)). If the plaintiff is able to satisfy the first two prongs, the burden then shifts to the defendant to establish "a compelling case that the exercise of jurisdiction would not be reasonable." *Impossible Foods*, 80 F.4th at 1088 (internal citation omitted). As set forth below, TBW has satisfied the second prong but failed to satisfy an element of the first prong of this analysis.

### 1. Purposeful Direction

Under the first prong of the specific jurisdiction analysis, the defendant "must purposefully direct its activities toward the forum state, purposefully avail

itself of the privileges of conducting activities there, or engage in 'some combination thereof.'" *Impossible Foods*, 80 F.4th at 1088 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). Of these options, the "purposeful direction" analysis is commonly applied to tort-based claims, while "purposeful availment" is applied to claims sounding in contract. *Impossible Foods*, 80 F.4th at 1088. Accordingly, the Court will apply the "purposeful direction" analysis to Ernst's motion.

To determine whether a defendant "purposefully directed" its activities toward the forum state, the Ninth Circuit applies a three-part "effects" test from *Calder v. Jones.* 465 U.S. 783 (1984); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). This test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Herbal Brands*, 72 F.4th at 1091 (internal quotation marks omitted). The test asks

> whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

*Herbal Brands*, 72 F.4th at 1091 (quoting *Will Co. v. Lee,* 47 F.4th 917, 922 (9th Cir. 2022)). As explained below, TBW has satisfied the first and second of these elements but has failed to meet its burden in establishing the third element. The Court will address each element in turn.

12

### A.     Intentional Act

Regarding the first element of the *Calder* effects test, TBW makes two primary arguments. First, TBW argues that Ernst's sale and shipment of products into Montana constitutes an intentional act. Second, TBW argues that that Ernst printed the statement "Made in the USA" on its packaging and in its catalogs, likewise constituting an intentional act. Because the first argument is sufficient to meet the requirements of this element of the effects test, the Court will not address whether the "Made in the USA" labeling constitutes an intentional act under *Calder v. Jones*.

Under established Ninth Circuit precedent, the sale of products to residents of the forum state by an out-of-state defendant is sufficient to satisfy the first element of the *Calder* effects test. *Herbal Brands*, 72 F. 4th at 1091. Here, TBW alleges and Ernst admits that Ernst sold and shipped products to Montana customers. (Doc. 34 at 19; Doc. 29-1 at ¶¶ 15-20). Accordingly, this element of the test is satisfied.

### B.     Express Aiming

Considering the second element of the *Calder* effects test, the Ninth Circuit in *Herbal Brands, Inc. v. Photoplaza, Inc.* held that "operating a website in conjunction with something more—conduct directly targeting the forum—is sufficient to satisfy the express aiming prong." 72 F.4th at 1092 (internal quotation

13

marks omitted). Under this prong, the Ninth Circuit distinguishes between "passive" and "interactive websites." An interactive website is one where "visitors can exchange information with the host computer by inputting data directly." *Herbal Brands*, 72 F. 4th at 1092.

The sale of products into the forum state via an interactive website constitutes the requisite "something more" under this analysis, provided that two requirements are met. First, the sales "must occur as part of the defendant's regular course of business instead of being 'random, isolated, or fortuitous.'" *Herbal Brands*, 72 F.4th at 1094 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). Second, the defendant "must exercise some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce." *Herbal Brands*, 72 F.4th at 1094.

Here, TBW has met its burden of establishing that the second element of the *Calder* effects test is met. As in *Herbal Brands*, Ernst sold products into the forum state through Amazon and via its own commercial website. Both websites meet the Ninth Circuit's "interactive" definition.[1]

---

[1] In briefing, Ernst offers details on how its sales via Amazon occur. Ernst states that Amazon sales are accomplished through two means, involving different levels of involvement from Ernst. (Doc. 29 at 9). Ernst's sales through its own website are sufficient for the purposes of this analysis, and so the Court need not address how the mechanics of the Amazon sales process affects the outcome under this test.

Further, the "something more" requirement is satisfied by the sale of Ernst's products to Montana customers. TBW alleges—and Ernst admits—that these sales were part of Ernst's "regular course of business." (Doc. 34 at 21; Doc. 12 at ¶ 12). Ernst's sales to Montana customers also demonstrate the requisite level of control, and go beyond merely placing its products "into the stream of commerce." As in *Herbal Brands,* Ernst chose to operate its website such that customers from Montana could place orders that would then be fulfilled and shipped. Therefore, the second element of the *Calder* effects test is satisfied.

TBW has also raised arguments (Doc. 34 at 22-24) regarding individualized targeting under the Montana Supreme Court's decision in *Groo v. Montana Eleventh Judicial District Court. Groo v. Montana Eleventh Jud. Dist. Ct,.* 537 P.3d 111 (Mont. 2023), *cert. denied sub nom. Groo v. Eddy*, 144 S. Ct. 1062 (2024). Because the second element of the *Calder* effects test is already satisfied, the Court need not address this additional basis for "express aiming."

### C. Harm Suffered in the Forum State

The final element in the *Calder* effects test asks whether the defendant's intentional act caused "harm that the defendant knows is likely to be suffered in the forum state." *Herbal Brands*, 72 F.4th at 1091 (quoting *Will Co.,* 47 F.4th at 922)). TBW makes two primary arguments regarding this element.

First, TBW argues Ernst "was fully aware that TBW is a Montana company

15

doing business in Montana at least as early as when it began embedding TBW's trademarks and trade name in [Ernst's] metadata." (Doc. 34 at 26). In support, TBW cites to United States District Court decisions from the Northern District of California and the Western District of Washington. *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816 (N.D. Cal. 2014); *Prisco v. Moss*, No. C24-5236, 2024 WL 3845711 (W.D. Wash. Aug. 16, 2024). However, TBW has failed to allege any facts that would show that Ernst had knowledge that TBW is a Montana company doing business in Montana. TBW has therefore failed to show that Ernst knew that the harm caused by embedding certain terms in its metadata would be suffered in Montana.

 Second, TBW points to the June 7, 2023 email and June 27, 2023 cease-and-desist-letter as evidence that this element is satisfied. In support, TBW cites *Herbal Brands*, where "cease-and-desist letters informed Defendants that their actions were causing harm in [the forum state]." 72 F.4th at 1091. In a footnote, the Ninth Circuit explained that these cease-and-desist letters "are relevant . . . due to the specific facts and claims at issue in this case. Because Plaintiff's claims are based on trademark infringement, without the letters Defendants might not have known that Plaintiff would be harmed in Arizona." *Herbal Brands*, 72 F.4th at 1091 n.2.

 The facts of this case are sufficiently distinct to distinguish the resolution of this issue from the court's decision regarding the same element in *Herbal Brands*.

In that case, the significance of the cease-and-desist letters lay in their power to inform the defendant of the forum in which the harm caused by their conduct was likely to occur. In effect, the letters overcame any argument that the defendant did not know where the plaintiff would be harmed.

In contrast, the correspondence provided by TBW provides no such notice. Neither document mentions TBW nor Montana. Accordingly, the Court cannot assume that Ernst was put "on notice" as to the forum in which harm to TBW might occur. Therefore, this element of the *Calder* effects test is not satisfied, and TBW has not met its burden showing that Ernst purposefully directed its activities towards Montana, the forum state.

## 2.     Forum-Related Activities

The second prong of the due process analysis requires that the plaintiff's claim "must be one which arises out of or relates to the defendant's forum-related activities . . . ." *Impossible Foods*, 80 F.4th at 1086. The Supreme Court has instructed that "[t]he first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co.,* 592 U.S. at 362.

Ninth Circuit precedent establishes that this prong may be satisfied where a defendant has sold products in the forum state and those sales constitute the harm alleged by the plaintiff. In *Herbal Brands*, the Ninth Circuit held that the plaintiff's

17

claims "which allege harm caused by Defendants' sale of products . . . clearly arise out of and relate to Defendants' conduct of selling those same products to [forum state] residents." 72 F.4th at 1096. Likewise, in *Ayla, LLC v. Alya Skin Pty. Ltd.*, the Ninth Circuit held that the plaintiff's trademark infringement claims related to the defendant's conduct in promoting, selling, and distributing products implicated in the trademark dispute within the forum. 11 F.4th 972, 983 (9th Cir. 2021).

Here, TBW has alleged that it was harmed by Ernst's sales to Montana customers. (Doc. 34 at 28). Ernst does not challenge that these sales occurred. Furthermore, TBW's trademark claims concerning Ernst's metadata also relate to the forum-state activities. At base, this case concerns how Ernst's products were marketed. The products at issue—as marketed by Ernst—were then sold and shipped into Montana. According to TBW, those actions caused harm. Applying Ninth Circuit precedent, this Court finds that the second prong of the specific jurisdiction due process analysis is satisfied. TBW's claims "clearly arise out of and relate to" Ernst's Montana sales. *Herbal Brands*, 72 F.4th at 1096. Accordingly, the Court finds that TBW has met its burden as to this prong of the specific jurisdiction analysis.

### 3. Reasonableness

If a plaintiff has established that first two prongs of specific jurisdiction analysis are satisfied, the burden shifts to the defendant to make a compelling case

regarding the reasonableness of the Court's jurisdiction over the defendant. *Impossible Foods*, 80 F.4th at 1087. In this case, TBW has failed to establish that all the requirements of the first two prongs are met. Therefore, the Court need not address Ernst's arguments regarding reasonableness at this time.

## IV.  Judgment on the Pleadings

Ernst's motion requests that—in the event TBW has met its burden to establish person jurisdiction—this Court issue a judgment on the pleading as to Count IV of the complaint under Fed. R. Civ. P. 12(c). As above, the Court finds that TBW has failed to meet its burden to establish personal jurisdiction. Therefore, the Court need not address Ernst's request for judgment on the pleadings at this time.

## V.  Conclusion

For the reasons set forth above, IT IS ORDERED that Ernst's motion is GRANTED. The complaint in this matter is DISMISSED WITH LEAVE TO AMEND. TBW shall have until October 14, 2025 to file an amended complaint in this matter.

DATED this 30th day of September, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge